OPINIONS OF THE SUPREME COURT OF OHIO

The full texts of the opinions of the Supreme Court of Ohio are being transmitted electronically beginning May 27, 1992, pursuant to a pilot project implemented by Chief Justice Thomas J. Moyer.

Please call any errors to the attention of the Reporter's Office of the Supreme Court of Ohio. Attention: Walter S. Kobalka, Reporter, or Deborah J. Barrett, Administrative Assistant. Tel.: (614) 466-4961; in Ohio 1-800-826-9010. Your comments on this pilot project are also welcome.

NOTE: Corrections may be made by the Supreme Court to the full texts of the opinions after they have been released electronically to the public. The reader is therefore advised to check the bound volumes of Ohio St.3d published by West Publishing Company for the final versions of these opinions. The advance sheets to Ohio St.3d will also contain the volume and page numbers where the opinions will be found in the bound volumes of the Ohio Official Reports.

Kucharski, Appellant, v. National Engineering & Contracting Company, Appellee.

[Cite as Kucharski v. Natl. Eng. & Contracting Co. (1994), ___ Ohio St.3d ___.]

Torts — R.C. 4101.13 may not be used as the basis of a negligence suit by an employee of one independent contractor against a second independent contractor working on a common building site, when the parties lack both a contractual relationship and control of each other's employees.

An independent contractor, who lacks a contractual relationship

with a second independent contractor, owes no affirmative duty beyond that of ordinary care to the employees of the second contractor where the first contractor does not supervise or actively participate in the second contractor's work. (Cafferkey v. Turner Constr. Co. [1986], 21 Ohio St.3d 110, 21 OBR 416, 488 N.E.2d 189, approved and followed.)

(No. 93-225 — Submitted February 2, 1994 — Decided June 15, 1994.)

Appeal from the Court of Appeals for Cuyahoga County, No. 62273.

Appellee National Engineering & Contracting Company ("National") is a general construction firm hired by the city of North Royalton to build a new settling tank for North Royalton's wastewater treatment plant. As a primary contractor, National reported directly to the city through the engineering design firm on the project, Finkbeiner, Pettis & Strout, Ltd. ("Finkbeiner").

Appellant, Thomas G. Kucharski, is an electrician employed by Precision Electric, Inc. ("Precision"). Precision was hired to perform electrical work on the North Royalton project and was also a primary contractor reporting directly to Finkbeiner.

The settling tank that National constructed is a large in-ground concrete structure approximately fourteen feet wide and ranging from twelve to seventeen feet deep. It is open on top and rises about six feet above the ground. Along one end of the tank National constructed a large concrete deck, flush with the top, that stretched out over the opening. In order to build the deck, National erected a scaffold to support the temporary wooden forms into which the concrete for the deck would be poured. The scaffold was also erected far enough into the tank to support a

temporary wooden platform from which National's employees could pour and finish the concrete deck. Because the back edge of this platform extended out over the tank, National also installed wooden guardrails.

When the concrete deck was finished, the scaffolding and platform were removed by National's employees on April 21, 1988, at the direction of National, in order to perform further work on the tank.

On May 6, 1988, representatives from Finkbeiner, National and Precision held their weekly meeting to discuss contracting issues. In order to coordinate the scheduling of certain tasks between National and other subcontractors, it was determined that Precision needed to perform its electrical installation on the new settling tank deck between May 6 and May 24, 1988.

Four days later, on May 10, 1988, Kucharski, while performing the electrical work, fell into the tank from the elevated concrete deck. A fitting he was trying to bend broke off in his hand and caused him to stumble backward, where he tripped over some planks and fell into the tank, injuring himself. Earlier that day, Kucharski and his supervisor had inspected the work area. Kucharski's supervisor had observed that there was no safety railing, but because the deck was large he considered it safe and did not think the working conditions required the use of a safety belt. The record reflects that Kucharski agreed. National did not supervise or actively participate in the work to be accomplished by Precision.

National subsequently had permanent guardrails installed around the settling tank.

Kucharski filed this negligence action for compensatory and punitive damages in the Cuyahoga County Common Pleas Court, alleging that when National disassembled the temporary wooden platform and railing, it removed a safety device, thereby violating R.C. 4101.13.

Following Kucharski's case in chief, National moved for a directed verdict. The trial court granted the motion as to punitive damages, but denied it as to the negligence claim. Although the jury awarded Kucharski $550,000 in damages, it also found him twenty percent negligent. Thus, the trial court reduced Kucharski's award to $440,000. The trial court denied National's motion for judgment notwithstanding the verdict or, in the alternative, for a new trial, and refused to determine and subtract collateral benefits from the award. The trial court also denied Kucharski's motion for relief from judgment on the punitive damages ruling. Both parties appealed.

The court of appeals reversed the trial court's decision, holding that it erred as a matter of law in denying National's motions for directed verdict and judgment notwithstanding the verdict. The appeals court noted first that Kucharski had conceded that R.C. 4101.11 and 4101.12 did not apply to the facts of this case. It agreed and concluded that National "could not properly be found liable under those statutes because of the lack of a contractual relationship between the parties, the lack of participation by National in Kucharski's work, and the obvious and inherent nature of the risk." The court of appeals then went on to hold that National cannot be liable to Kucharski under R.C. 4101.13 because National "did not remove a safeguard furnished for use on the concrete deck that Kucharski fell off of."

The cause is now before this court pursuant to the allowance of a motion to certify the record.

_____

Endress & Endress Co., L.P.A., Richard R. Endress and Jeffrey C. Endress, for appellant.

Arter & Hadden and Irene C. Keyse-Walker, for appellee.

Schottenstein, Zox & Dunn and Roger L. Sabo, urging affirmance for amicus curiae, Ohio Contractors Association.

Stewart Jaffy & Associates Co., L.P.A., Stewart R. Jaffy and Marc J. Jaffy, urging reversal for amicus curiae, Ohio AFL-CIO.

_____

Wright, J. The narrow issue we will decide in this matter is whether R.C. 4101.13 may be used as the basis of a negligence suit by an employee of one independent contractor against a second independent contractor working on a common building site, when the parties lack both a contractual relationship and control of each other's employees. We hold that it may not.

Kucharski argues that because National employees removed the temporary guardrails, National may properly be found liable for negligence pursuant to R.C. 4101.13. This argument has no merit.

R.C. 4101.13 states:

"No employee shall remove, displace, damage, destroy, or carry off any safety device or safeguard furnished or provided for use in any employment or place of employment, or interfere in any way with the use thereof by any other person. No employee shall interfere with the use of any method or process adopted for the protection of any employee in such employment or place of employment, or frequenter of such place of employment, or fail to

follow and obey orders and to do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees and frequenters." (Emphasis added.)

R.C. 4101.13 and its companion provisions, R.C. 4101.111 and 4101.12,2 are commonly referred to as the "frequenter" statutes. Originally enacted to benefit employees, these statutes are "no more than a codification of the common-law duty owed by the owner or occupier of premises to business invitees to keep his premises in a reasonably safe condition and to give warnings of latent or concealed perils of which he has, or should have, knowledge." Westwood v. Thrifty Boy Super Markets, Inc. (1972), 29 Ohio St.2d 84, 86, 58 O.O.2d 154, 156, 278 N.E.2d 673, 675. The subsequent passage of the Ohio Workers' Compensation Act, which protected covered employers from damage suits brought by employees injured on the job, rendered these statutes largely obsolete. Ford Motor Co. v. Tomlinson (C.A.6, 1956), 229 F.2d 873, 879. They continue to be used, however, by injured employees of subcontractors who seek damages, in addition to workers' compensation benefits, from the property owners, or contractors in privity with their employers, who fail to keep the property safe from hazards for "frequenters."

We defined exactly what duty of care a general contractor owes to its subcontractors in Cafferkey v. Turner Constr. Co. (1986), 21 Ohio St.3d 110, 21 OBR 416, 488 N.E.2d 189. The Cafferkey case involved the decision of the subcontractor to lower two employees into a two-hundred-foot-deep caisson hole, despite an earlier detection of methane gas there, to burn off with a cutting torch a portion of a twisted metal casing. The general contractor, which retained supervisory authority over its

subcontractors, was not informed about the subcontractor's decision. An explosion occurred in the hole when one of the employees struck a flint to light his torch. Both were severely burned and later died as a result of their injuries. Affirming a grant of summary judgment in favor of the defendant general contractor, this court held that a general contractor must actively participate in a subcontractor's work before it becomes susceptible to liability for injuries sustained by the subcontractor's employees who were engaged in inherently dangerous work. A general contractor does not owe a duty of care to the employees of a subcontractor "merely by virtue of its supervisory capacity." Id. at syllabus.

The Cafferkey decision is supported by Hirschbach v. Cincinnati Gas & Elec. Co. (1983), 6 Ohio St.3d 206, 6 OBR 259, 452 N.E.2d 326. In Hirschbach we held that "[o]ne who engages the services of an independent contractor, and who actually participates in the job operation performed by such contractor and thereby fails to eliminate a hazard which he, in the exercise of ordinary care, could have eliminated, can be held responsible for the injury or death of an employee of the independent contractor." (Emphasis added.) Id. at syllabus. See, also, Wellman v. East Ohio Gas Co. (1953), 160 Ohio St. 103, 51 O.O. 27, 113 N.E.2d 629, and Davis v. Charles Shutrump & Sons Co. (1942), 140 Ohio St. 89, 23 O.O. 299, 42 N.E.2d 663.

We find the preceding authority applicable to the case under consideration today. Although Hirschbach was based on the duties of an employer found in R.C. 4101.11 and 4101.12, there is no question that it is appropriate to extend that analysis to the

duties of an employee under R.C. 4101.13. If a general contractor owes no duty of care to a subcontractor pursuant to R.C. 4101.11 and 4101.12 because it does not actively participate in the subcontractor's work, it follows then that the general contractor owes no duty of care to the subcontractor under R.C. 4101.13, which prescribes the duties of employees. We are satisfied that when two or more independent contractors are engaged in work on the same premises, it is the duty of each contractor, in prosecuting its work, to use ordinary and reasonable care not to cause injuries to the employees of another contractor. An independent contractor who lacks a contractual relationship with a second independent contractor owes no affirmative duty beyond that of ordinary care to the employees of the second contractor, where the first contractor does not supervise or actively participate in the second contractor's work.

Both National and Precision reported directly to Finkbeiner. There was no privity between National and Precision. They were coequals. National did not control, supervise or actively participate in any aspect of the work performed by Precision's employees. Furthermore, Kucharski, along with his supervisor, surveyed the concrete deck and determined it was large enough to be safe. Kucharski admits that he was aware of the depth of the tank and the lack of guardrails on the deck. It was Kucharski's supervisor who decided Kucharski did not need to wear a safety belt. As noted above, Kucharski concurred in the view. By contrast, National employees who performed work on the concrete deck after the scaffolding and railing were removed were required by National to wear safety equipment, including belts.

Kucharski conceded that National owed no duty of care to him under R.C. 4101.11 and 4101.12. Therefore, in light of the preceding analysis, we find as a matter of law that National owed no duty of care to Kucharski and could not properly be found liable under R.C. 4101.13. National was not Kucharski's employer and exercised no control over him. No contractual relationship existed between the parties and Kucharski admitted that he was aware of the fall hazard. R.C. 4101.13 refers to the duties of employees, not the employer, and should not have been applied to this case.

We hold, therefore, that the trial court erred as a matter of law when it denied National's motions for directed verdict and judgment notwithstanding the verdict. The appeals court was correct in reversing that decision.

Accordingly, the judgment of the court of appeals is affirmed.

Judgment affirmed.

Moyer, C.J., A.W. Sweeney and Resnick, JJ., concur.

Douglas and Pfeifer, JJ., dissent with opinion.

Mahoney, J., dissents.

Joseph E. Mahoney, J., of the Eleventh Appellate District, siting for F.E. Sweeney, J.

FOOTNOTES:

1. R.C. 4101.11 states:

"Every employer shall furnish employment which is safe for the employees engaged therein, shall furnish a place of employment which shall be safe for the employees therein and for frequenters thereof, shall furnish and use safety devices and

safeguards, shall adopt and use methods and processes, follow and obey orders, and prescribe hours of labor reasonably adequate to render such employment and place of employment safe, and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees and frequenters."

2. R.C. 4101.12 states:

"No employer shall require, permit, or suffer any employee to go or be in any employment or place of employment which is not safe, and no such employer shall fail to furnish, provide, and use safety devices and safeguards, or fail to obey and follow orders or to adopt and use methods and processes reasonably adequate to render such employment and place of employment safe. No employer shall fail to do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees or frequenters. No such employer or other person shall construct, occupy, or maintain any place of employment that is not safe."

Pfeifer, J., dissenting. The jury in this case, in responding to the jury interrogatories, found by a preponderance of the evidence that the defendant, National Engineering & Contracting Company, was negligent and that its negligence was a proximate cause of the plaintiff's injury. The majority too easily shrugs off those findings.

The majority, while finding that National could not be held liable for violating R.C. 4101.13, does recognize that National still owed Kucharski the duty of ordinary care. The jury may well have found that that duty was breached. The jury was instructed as to ordinary care as well as to R.C. 4101.13. Evidence was introduced that National had left planks stacked

near the edge of the concrete deck from which Kucharski fell. Kucharski testified that he had tripped over those planks before falling over the edge. The jury may well have concluded that National was negligent for having left the planks in that location.

The jury interrogatories did not ask the jury to state why they found National negligent. Because there is a theory in addition to R.C. 4101.13 by which National could be found negligent, and since the jury did find negligence, this case should have been returned for retrial, at the very least.

Douglas, J., concurs in the foregoing dissenting opinion.