OPINION
{¶ 1} The following is an accelerated calendar appeal submitted on the briefs of the parties. Appellant, Maria L. Gillotti, appeals from a judgment of the Trumbull County Court of Common Pleas granting summary judgment in favor of appellee, Lear Corporation Automotive Systems ("Lear").
 {¶ 2} The record discloses the following facts. On September 8, 1999, appellant filed a civil complaint in the Trumbull County Court of Common Pleas. Appellant's complaint set forth a cause of action against Joseph Rimedio ("Rimedio"), Darcy Fletcher ("Ms. Fletcher"), and Lear. The complaint alleged that Rimedio physically assaulted appellant while on Lear's premises. Appellant maintained that due to a lack of security, Lear had breached its duty to protect her health, safety and welfare, in violation of R.C. 4101.11 and/or 4101.12.
 {¶ 3} Lear filed its answer with the trial court, and both sides engaged in discovery. The following events were gathered from various deposition testimonies. On July 20, 1999, appellant, as Lear's employee, was working the third shift at Lear's plant in Lordstown, Ohio. During appellant's shift, at about 1:30 a.m., Ms. Fletcher and Rimedio arrived at the plant and parked at loading dock D.
 {¶ 4} Ms. Fletcher was also employed by Lear. When Ms. Fletcher arrived at the plant, she was not on duty or scheduled to work that night. Instead, she came to the plant to bring food to her co-workers and fill out paperwork regarding a disability claim.
 {¶ 5} Rimedio was not employed by Lear, but was invited by Ms. Fletcher to accompany her to the plant. Ms. Fletcher was aware that Rimedio and appellant had been involved in a romantic relationship. However, she was unaware that appellant had recently ended the relationship.
 {¶ 6} Upon their arrival at the plant, Ms. Fletcher and Rimedio met with some of her co-workers at an outdoor picnic table to enjoy a lunch break together. Following the lunch break, both Ms. Fletcher and Rimedio entered the plant so that she could attend to her paperwork. Once inside the plant, Ms. Fletcher paged appellant to say hello and obtain information about the disability claim.
 {¶ 7} Appellant answered the page and located Ms. Fletcher and Rimedio inside the plant. After the three parties briefly conversed, Ms. Fletcher left appellant and Rimedio to fill out her disability claim paperwork. Following Ms. Fletcher's departure, the conversation between appellant and Rimedio escalated into a verbal argument. Both Rimedio and appellant walked out of the plant together, and continued to argue outside of the plant near the picnic table. While outside, Rimedio allegedly, without warning, hit appellant in the face and threw her against a wall. Subsequent to the alleged assault, appellant re-entered the plant and was assisted by her co-workers in seeking medical attention.
 {¶ 8} On December 10, 2001, Lear filed a motion for summary judgment with the trial court. Lear explained that appellant's only theory of recovery would be under common law principles of negligence. Ultimately, Lear concluded that it was under no duty to protect appellant because Rimedio's actions were unforeseeable.
 {¶ 9} In her brief in opposition, appellant argued that Lear's failure to install the appropriate security and procedural safeguards left her unprotected against Rimedio's alleged assault. Appellant also maintained that Rimedio's violent conduct was foreseeable because of unrelated previous security problems at Lear's plant. As proof of these security problems, appellant attached police reports of various criminal activities which took place in the plant's parking lot.
 {¶ 10} On July 17, 2002, the trial court issued a judgment entry granting Lear's summary judgment motion. The trial court decided that neither R.C. 4101.11 nor 4101.12 were applicable. Further, the trial court stated that the events that ensued on July 19, 1999, were unforeseeable. Accordingly, the trial court determined that Lear was under no duty to prevent the actions of the night in question, and that this was a final appealable order with no just cause for delay.[1]
 {¶ 11} From this judgment, appellant filed a timely appeal setting forth the following assignments of error for our consideration:
 {¶ 12} "[1] The court erred in finding that Lear had no statutory duty under R.C. 4101.11 and R.C. 4101.12 as an employer to prevent or reduce the risk of an attack on appellant in her workplace by a non employee.
 {¶ 13} "[2] The trial court erred when it held that this incident was not sufficiently foreseeable to impose a duty on Lear.
 {¶ 14} "[3] The trial court applied the wrong standard by erroneously weighing the evidence and by failing to view the evidence of appellant, as the nonmoving party, in a light most favorable to the appellant."
 {¶ 15} Prior to discussing the merits of appellant's assignments of error, we will set forth the appropriate standard of review when examining a motion for summary judgment.
 {¶ 16} An appellate court reviews a trial court's decision on a motion for summary judgment de novo. Grafton v. Ohio Edison Co. (1996),77 Ohio St.3d 102, 105. Under Civ.R. 56, summary judgment is appropriate when: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can reach only one conclusion, which is adverse to the party against whom the motion is made, such party being entitled to have the evidence construed most strongly in their favor. Civ.R. 56; Mootispawv. Eckstein (1996), 76 Ohio St.3d 383, 385; Leibreich v. A.J.Refrigeration, Inc. (1993), 67 Ohio St.3d 383, 385.
 {¶ 17} Material facts are defined as facts that might affect the outcome of the suit under the governing law of the case. Turner v.Turner (1993), 67 Ohio St.3d 337, 340, citing Anderson v. Liberty Lobby,Inc. (1986), 477 U.S. 242, 248. To ascertain what constitutes a genuine issue, the court must resolve whether the evidence presents a sufficient disagreement to require submission to a jury, or whether it is so one-sided that one party must prevail as a matter of law. Turner at 340.
 {¶ 18} The party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential elements of the nonmoving party's claim. Dresher v. Burt (1996), 75 Ohio St.3d 280. Accordingly the moving party must point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving parties claim. Id. If the moving party satisfies its initial burden under Civ.R. 56(C), the nonmoving party has the burden to respond as provided in the rule, so as to demonstrate that there is no genuine issue of a material fact. Id. However, if the nonmoving party fails to meet this burden, then the trial court may enter summary judgment against that party. Id.
 {¶ 19} Appellant's first assignment of error contends that both R.C. 4101.11[2] and 4101.12[3] create a statutory duty for an employer to prevent or reduce the risk of an attack on an employee by a third party while on the employer's premises. We disagree to the following extent.
 {¶ 20} R.C. 4101.11 and 4101.12 are commonly referred to as "frequenter" statutes. The "frequenter" statutes were enacted to benefit employees. The subsequent passage of the Ohio Workers' Compensation Act, however, rendered these statutes largely obsolete. Kucharski v. Natl.Eng. Contracting Co., 69 Ohio St.3d 430, 434, 1994-Ohio-320. Today the "frequenter" statutes are most commonly used by subcontractors who seek damages from property owners or contractors in privity with their employers, who fail to keep their property safe from hazards for "frequenters." Id. The Supreme Court of Ohio has clarified that an employer's duty under the "frequenter" statutes "is no more than a codification of the common-law duty owed by an owner or occupier of premises to invitees, requiring that the premises be kept in a reasonably safe condition, and that warning be given of dangers of which he has knowledge." Eicher v. United States Steel Corp. (1987), 32 Ohio St.3d 248,249. See, also, Lexie v. Ohio Edison Co. (1996), 11th Dist. No. 96-T-5384, 1996 Ohio App. LEXIS 5642, at 10.
 {¶ 21} Although the "frequenter" statutes are not a part of the Workers' Compensation Act, R.C. 4121.13(D) gives the administrator of workers' compensation the authority to investigate and carry out the procedures under the "frequenter" statutes. Accordingly, it is clear the General Assembly intended for an employee's claim under the "frequenter" statutes to be treated as a workers' compensation claim. Therefore, those concepts of law which govern the applicability of the Workers' Compensation Act, also govern a claim under the "frequenter" statutes.
 {¶ 22} That being said, as is the case with the Workers' Compensation Act, the "frequenter" statutes reflect the state's policy to provide a statutory system for compensating workers for injuries and occupational diseases sustained in the course of and arising out of theiremployment. See, e.g., Conley v. Brown Corp. of Waverly, 82 Ohio St.3d 470,477, 1998-Ohio-194; Neal v. McGill Septic Tank Co. (1998), 11th Dist. No. 98-T-0022, 1998 Ohio App. LEXIS 5808, at 4. The Supreme Court of Ohio has consistently held that where an employee asserts a worker compensation claim for an intentional tort, the injury received by the employee did not arise out of his or her employment. Blankenship v.Cincinnati Milacron Chemicals, Inc. (1982), 69 Ohio St.2d 608, 614. See, also, State ex rel. Ohio AFL-CIO v. Voinovich, 69 Ohio St.3d 225, 230,1994-Ohio-1 (holding that "intentional torts are completely unrelated to workers' compensation and the employment relationship."). In short, injuries from intentional torts are totally unrelated to an employee's employment. Johnson v. BP Chemicals, Inc., 85 Ohio St. 298,1999-Ohio-267, at fn. 8. Thus, neither the Workers' Compensation Act nor the "frequenter" statutes are applicable when an employee seeks relief for damages caused by an intentional tort.
 {¶ 23} In the instant case, appellant's claim against Lear seeks damages from injuries that stem from the intentional tort of a third party, Rimedio. Clearly, appellant's injuries did not arise out of her employment relationship with Lear. Therefore, R.C. 4101.11 and 4101.12 do not provide statutory authority from which appellant may pursue a claim against Lear. Appellant's first assignment of error is without merit.
 {¶ 24} Based upon the foregoing analysis, appellant is precluded from asserting a claim under the "frequenter" statutes. Nevertheless, appellant's claim may still be brought pursuant to common law principles of negligence. Actionable negligence requires appellant to show the existence of a duty, breach of that duty, and an injury proximately caused by the breach. Jeffers v. Olexo (1989), 43 Ohio St.3d 140, 142.
 {¶ 25} The primary focus of the trial court was the duty element of negligence. The trial court explained that, after reviewing the totality of the circumstances, appellant failed to present sufficient evidence to establish that Lear could have foreseen the alleged attack by Rimedio. Therefore, based upon the evidence presented, the trial court decided that Lear was under no duty to protect appellant from Rimedio's unforeseeable assault. Although we ultimately affirm the trial court's judgment, the basis of our affirmance is fixed upon appellant's failure to demonstrate that Lear's alleged lack of security was the proximate cause of her injuries.
 {¶ 26} "[T]he existence of a duty is fundamental to establishing actionable negligence. `*** If there is no duty, then no legal liability can arise on account of negligence. Where there is no obligation of care or caution, there can be no actionable negligence.'" (Citations omitted.) Jeffers at 142. Furthermore, the duty element of negligence is a question of law for the court to determine. Wallace v. Ohio Dept. of Commerce,Div. of State Fire Marshal, 96 Ohio St.3d 266, 2002-Ohio-4210, at ¶ 22.
 {¶ 27} As an initial matter, we must place the facts of the case sub judice in the proper context. As Lear's employee, appellant also fits the definition of a business invitee. A business invitee is defined as "'*** a business visitor, that is, one rightfully on the premises of another for purposes in which the possessor of the premises has a beneficial interest.'" Provencher v. Ohio Dept. of Transp. (1990),49 Ohio St.3d 265, 265-266, quoting Scheibel v. Lipton (1951),156 Ohio St. 308, 328-329. Accordingly, appellant will be considered a business invitee for purposes of our review.
 {¶ 28} "Because of the special relationship between a business and its [business invitee], a business `may be subject to liability for harm caused to such a business invitee by the conduct of third persons that endangers the safety of such invitee.'" Reitz v. May Co. Dept. Stores
(1990), 66 Ohio App.3d 188, 191, quoting Howard v. Rogers (1969),19 Ohio St.2d 42, 48. "A business owner has a duty to warn or protect its business invitees from criminal acts of third parties when the business owner knows or should know that there is a substantial risk of harm to its invitees on the premises in the possession and control of the business owner." Simpson v. Big Bear Stores Co., 73 Ohio St.3d 130,1995-Ohio-203, at syllabus. See, also, White v. Euclid Square Mall
(1995), 107 Ohio App.3d 536, 539 (holding that the duty of a business to protect a business invitee from a third party is dependent upon the foreseeability of the harm); Collins v. Sabino (Aug. 29, 1997), 11th Dist. No. 96-T-5590, 1997 Ohio App. LEXIS 3587, at 7. Thus, in her second assignment of error, appellant contends that the trial court erred in determining that Rimedio's assault was unforeseeable.
 {¶ 29} The foreseeability of criminal acts of third parties is dependent upon the actual knowledge of the business-defendant or whether a reasonably prudent business would have anticipated that an injury was likely to occur. Reitz at 192. The knowledge of the defendant-business is based on the totality of the circumstances. White at 540; Feichtner v.Cleveland (1994), 95 Ohio App.3d 388, 396; Reitz at 192. Moreover, the totality of the circumstances must be somewhat overwhelming before a business will be held to be on notice of and therefore under a duty to protect against the criminal acts of third parties. Rozzi v. The CafaroCo., 11th Dist. No. 2001-T-0090, 2002-Ohio-4817, at ¶ 28.
 {¶ 30} The totality of the circumstances standard is broad in scope and allows a court to take into consideration evidence outside of a business-defendant's knowledge of prior criminal activity when making its determination as to whether a duty exists. Reitz at 193. The adoption of this liberal standard allows the first victim of criminal activity on a business-defendant's premises to establish that the third parties criminal activity was foreseeable. Reitz at 194.
 {¶ 31} In an attempt to demonstrate that Rimedio's actions were foreseeable, appellant attached various police reports of alleged criminal activity, which occurred in Lear's parking lot, to her motion for summary judgment. These police reports involved minor instances of car damage including mysterious dents, dings, and tire slashings. Although these reported activities took place after appellant's alleged assault, the broad totality of the circumstances standard allows us to consider such evidence when determining the existence of a duty to protect appellant from the criminal activities of third parties.
 {¶ 32} While the police reports alone do not establish that Rimedio's alleged assault was foreseeable, deposition testimony demonstrates Lear had actual knowledge that adequate security procedures were necessary to safeguard its employees from third parties. Dean York ("Mr. York"), an assistant human resources manager, provided the following testimony:
 {¶ 33} "Q: Do you have any worries that some unauthorized person that you don't know why they are there would cause any harm?
 {¶ 34} "A: Sure.
 {¶ 35} "Q: Okay. What kind of harm are you worried about?
 {¶ 36} "A: Anything. Any kind of harm.
 {¶ 37} "Q: Are you worried about harm to equipment?
 {¶ 38} "A: Yes, I'm worried about the equipment, I'm worried about the employees, I'm worried about the technology, our trade.
 {¶ 39} "Q: *** [Y]ou said you were concerned about the employees. Are you afraid someone would come into the building who is unauthorized to be there and harm an employee?
 {¶ 40} "A: That's a concern.
 {¶ 41} "Q: Okay. Are you concerned that some irate employee might come into the facility when they are [sic] aren't supposed to be scheduled and cause some harm?
 {¶ 42} "A. That's a concern.
 {¶ 43} Clearly, Mr. York's testimony reinforces the fact that Lear found it necessary to employ adequate safety procedures to protect employees, working on Lear's premises, from a third party who may possibly engage in criminal activity. The evidence provided by appellant demonstrates that Lear had knowledge of its basic duty to protect its employee's from a third party such as Rimedio. The evidence also confirmed that a reasonably prudent business would anticipate that an injury from a third party's criminal activity was a definite possibility. That being said, we find that Rimedio's actions were foreseeable, and, therefore, Lear was under a duty to adequately protect appellant from the criminal activity of a third party.
 {¶ 44} Despite Lear's duty, we need not examine the adequacy of the safety procedures employed by Lear as it is evident that appellant failed to show that Lear was the proximate cause of her injuries. Instead, appellant's intervening actions destroyed her ability to establish Lear's alleged negligent security procedures as the proximate cause of any damages she sustained.
 {¶ 45} "Negligent conduct is the `proximate cause' of an injury if the injury is the natural and probable consequence of the conduct." Reedv. Weber (1992), 83 Ohio App.3d 437, 441, citing Cascone v. Herb Kay Co.
(1983), 6 Ohio St.3d 155. "An injury is the natural and probable cause of negligent conduct if the injury might and should have been foreseen." Reed at 441. An injury is foreseeable if a reasonably prudent person, under the same or similar circumstances, would have anticipated that injury to another was the likely result of his conduct. See, e.g.,Commerce Industry Ins. Co. v. Toledo (1989), 45 Ohio St.3d 96.
 {¶ 46} The Supreme Court of Ohio explained that an intervening event effectively breaks the causal connection between a defendant's negligent act and the resulting damage. Queen City Terminals, Inc. v.Gen. Am. Transp. Corp., 73 Ohio St.3d 609, 619, 1995-Ohio-285. However, there is no intervening event if the event was reasonably foreseeable by the negligent party. Id. "[A]n intervening cause is foreseeable to the original negligent actor if the original and successive acts may be joined together as a whole, linking each of the actors to the liability. By contrast, the original negligence is excused if there is a new or independent act which intervenes and breaks the causal connection. The term `new' means the second act could not reasonably have been foreseen by the original actor." Hubell v. Ross (Nov. 9, 1999), 10th Dist. No. 99AP-294, 1999 Ohio App. LEXIS 5260, at 9, citing Queen City Terminals,Inc. at 619.
 {¶ 47} In the instant case, the intervening actions of appellant effectively broke the causal link between the original and successive acts and Lear's possible negligence. This is not an incident where Rimedio surprised appellant and immediately struck her before she could react. Instead, appellant's deposition testimony makes it clear that when she first saw Rimedio she did not attempt to walk away from him or discontinue their conversation. Even after their conversation had escalated into a verbal argument, appellant willingly accompanied Rimedio to the outside picnic area to continue their verbal confrontation. Although appellant had ample time to call for help to have Rimedio removed, or to inform Lear of any potential danger, she declined to do so. Appellant's actions demonstrate that even she could not foresee Rimedio's alleged attack.
 {¶ 48} Regardless of the adequacy of Lear's security procedures, appellant's willingness to engage in a verbal confrontation with Rimedio and accompany him outside of the plant represents an unforeseeable intervening event. Due to appellant's willingness to confront Rimedio, even the best safety procedures would have been ineffective in safeguarding her from Rimedio's alleged attack. It was appellant's own actions, not Lear's, which lead to the alleged physical altercation. As a result, appellant's intervening action broke any causal connection between Lear's alleged negligent security and appellant's resulting injuries.
 {¶ 49} Appellant had the burden to show by evidential input that Lear was the proximate cause of her injuries. She failed to do this. The fact that she was attacked by Rimedio does not per se, demonstrate Lear's negligence. The foregoing analysis has demonstrated that appellant's own actions intervened, thereby breaking the causal connection necessary to demonstrate that Lear's alleged negligent security was the proximate cause of her injuries. For this reason, appellant's claim under negligence fails.
 {¶ 50} Our de novo review has found that Lear was not the proximate cause of her injuries. Thus, appellant's third assignment of error is moot.
 {¶ 51} After reviewing appellant's assigned errors, we find that the "frequenter" statutes are not applicable and appellant's common law negligence claim is not actionable. Appellant's assignments of error are without merit. The decision of the trial
court to grant Lear's motion for summary judgment is hereby affirmed, although for a reason other than the one stated in the trial court's judgment entry.
Judgment affirmed.
DIANE V. GRENDELL, J., concurs.
DONALD R. FORD, P.J., concurs in judgment only.
[1] On January 17, 2002, Ms. Fletcher filed a motion for summary judgment, which the trial court granted. Appellant's claim against Rimedio is still pending and is scheduled for trial.
[2] R.C. 4101.11 provides: "Every employer shall furnish employment which is safe for the employees engaged therein, shall furnish a place of employment which shall be safe for the employees therein and for frequenters thereof, shall furnish and use safety devices and safeguards, shall adopt and use methods and processes, follow and obey orders, and prescribe hours of labor reasonably adequate to render such employment and places of employment safe, and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees and frequenters."
[3] R.C. 4101.12 provides: "No employer shall require, permit, or suffer any employee to go or be in any employment or place of employment which is not safe, and no such employer shall fail to furnish, provide, and use safety devices and safeguards, or fail to obey and follow orders or to adopt and use methods and processes reasonably adequate to render such employment and place of employment safe. No employer shall fail to do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees or frequenters. No such employer or other person shall construct, occupy, or maintain any place of employment that is not safe."