[Cite as *Smith v Lincoln Elec. Co.*, 2024-Ohio-5209.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

CHANEL M. SMITH,                         :

    Plaintiff-Appellant,           :

    v.                                        :

LINCOLN ELECTRIC COMPANY,      :

    Defendant-Appellee.            :

No. 113340

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** October 31, 2024

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-22-969416

---

### *Appearances:*

Michael T. Conway and Company and Michael T. Conway, *for appellant.*

Ogletree, Deakins, Nash, Smoak & Stewart, P.C., John Gerak, Matthew K. Seeley, and Komlavi Atsou, *for appellee.*

EMANUELLA D. GROVES, P.J.:

{¶ 1} Plaintiff-appellant, Chanel M. Smith ("Smith"), appeals the decision of the trial court granting defendant-appellee Lincoln Electric Company's ("LEC")

motion for summary judgment as to Counts 1 and 2 of her complaint. For the foregoing reasons, we affirm the decision of the trial court.

**Factual and Procedural Background**

{¶ 2} Smith worked at LEC as a piece worker from October 25, 2021, until August 15, 2022. On August 11, 2022, Smith posted a picture of herself and an ex-boyfriend to Instagram. The following day on August 12, 2022, a fellow LEC employee, Jhasmine Peeler ("Peeler"), confronted Smith in the women's locker room regarding the picture, because Smith's ex-boyfriend was Peeler's current boyfriend. After a verbal exchange, the two engaged in a physical altercation, which began with Peeler using one finger to push Smith forcefully in the forehead. The two began fighting, and Smith subsequently reported the incident to LEC security. After an investigation, LEC terminated both Smith and Peeler. Peeler was terminated for fighting and lying about the incident during the investigation. Smith was terminated for fighting during work.

{¶ 3} On September 29, 2022, Smith filed a lawsuit against LEC, alleging wrongful termination against public policy and other claims. On April 22, 2023, Smith filed an amended complaint with leave of court raising five claims: wrongful termination against public policy (Count 1); assault and battery (Count 2); workers' compensation retaliation (Count 3); breach of a duty created under R.C. 4101.11 (Count 4); and spoliation of evidence (Count 5). LEC filed a motion for summary judgment arguing that they were entitled to a judgment as of right and that Smith

failed to establish any genuine issue of material fact to present at trial. Smith filed a brief in opposition on June 30, 2023.

{¶ 4} On October 6, 2023, the trial court granted LEC's motion for summary judgment as to all counts. Smith appeals, assigning the following errors for our review.

### Assignment of Error No. 1

The trial court below erred to the prejudice of the plaintiff-appellant by dismissing her assault and battery claim after failing to consider the evidence defendant employer ratified an assault and battery committed against her by her co-worker.

### Assignment of Error No. 2

The trial court below erred to the prejudice of the plaintiff-appellant dismissing the wrongful termination case presented in the amended complaint by finding facts in the record that do not exist or by ignoring or discounting the record evidence and their fair inferences against the appellee.

### Assignment of Error No. 3

The trial court below erred to the prejudice of the plaintiff-appellant by finding in her public policy tort claim the "plaintiff has failed to establish a public policy applicable to this case."

### Assignment of Error No. 4

The trial court below erred to the prejudice of the plaintiff-appellant by finding in the public policy tort claim the defendant employer enforced a "policy" of "terminating employees who fail to avail themselves of opportunities to avoid physical altercations."

## Law and Analysis

{¶ 5} Preliminarily, we note that Smith has elected to confine her appeal to the trial court's ruling granting summary judgment to LEC on Counts 1 and 2 of

Smith's complaint. Accordingly, we will not address the trial court's ruling on Counts 3 through 5.

## Standard of Review

**{¶ 6}** We review an appeal from a decision on a motion for summary judgment under the de novo standard of review. *Khalia Ra v. Swagelok Mfg. Co., L.L.C.*, 2021-Ohio-1657, ¶ 16 (8th Dist.), citing *Montgomery v. Greater Cleveland Regional Transit Auth.*, 2021-Ohio-1198, ¶ 18 (8th Dist.), citing *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). Under this standard, we afford no deference to the trial court's decision and independently review the record to determine whether summary judgment was appropriate. *Id.*

**{¶ 7}** Summary judgment is warranted when: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion and viewing the evidence most strongly in favor of the nonmoving party, the moving party is entitled to summary judgment. *Id.* at ¶ 17, citing Civ.R. 56. "Once the moving party demonstrates entitlement to summary judgment, the burden shifts to the nonmoving party to produce evidence related to any issue on which the party bears the burden of production at trial. Civ.R. 56(E)." *Id.*, quoting *Mattress Matters, Inc. v. Trunzo*, 2016-Ohio-7723, ¶ 10 (8th Dist.).

## Respondeat Superior and Employee's Assault and Battery

**{¶ 8}** In the first assignment of error, Smith argues that the trial court erred when it found in favor of LEC on her assault and battery claim because the trial court

failed to consider whether LEC ratified Peeler's conduct and became liable for the harm Peeler caused.

{¶ 9} The doctrine of respondeat superior allows an employer to be liable for the torts of its employee "committed while acting in the scope of their employment." *Saleh v. Marc Glassman, Inc.*, 2005-Ohio-6127, ¶ 20 (8th Dist.) quoting the Restatement of the Law 2d, Agency, § 481, Section 219(1), (1958). If the tort is intentional, it is ordinarily considered outside the scope of employment. Generally, an action of an employee that is committed to "vent their own spleen or malevolence against the injured person, is a clear departure from his employment and his principal or employer is not responsible therefore." *Id.*, citing *Vrabel v. Acri*, 156 Ohio St. 467, 474 (1952).

{¶ 10} Smith's challenge does not dispute that Peeler was acting outside the scope of her employment, but rather whether LEC's actions ratified the assault and battery anyway. Ratification is an exception to the rule that an employer is not responsible for the intentional torts of its employees. *Amato v. Heinika Ltd.*, 2005-Ohio-189, ¶ 5 (8th Dist.). Employer liability is appropriate "where the tort is intentional, . . ., [when] the behavior giving rise to the tort [is] 'calculated to facilitate or promote the business for which the servant was employed.'" *Clinton v. Faurecia Exhaust Sys.*, 2012-Ohio-4618, ¶ 75 (2d Dist.), quoting *Byrd v. Faber*, 57 Ohio St.3d 56, 58 (1991). Here, LEC points out that there was no evidence in the record that Peeler's actions facilitated or promoted LEC's business in any manner. Additionally, LEC promptly terminated Peeler, repudiating her conduct. Since there is no

evidence that Smith's termination facilitated LEC's business, LEC met its burden that they were entitled to judgment as a matter of law on the issue of ratification. The burden thus shifted to Smith to establish that there remained genuine issues of material fact that LEC ratified Peeler's conduct.

{¶ 11} Smith raises two unconvincing ratification arguments. First, Smith alleges that LEC had no reason to terminate her and her termination ratified Peeler's misconduct. Essentially, Smith argues that she was acting in self-defense; therefore, her conduct was permissible and she should not have been terminated. While it is true that a person is permitted to defend themselves in response to nondeadly force and there is no duty to retreat, *see State v. Davidson-Dixon*, 2021-Ohio-1485, ¶ 32 (8th Dist.), that does not preclude termination from employment. *See Jones v. Bd. of Rev.,* 1993 Ohio App. LEXIS 4788, *9 (10th Dist. 1993) (an unemployment compensation case acknowledging that in criminal cases one can stand and defend themselves, "[b]ut in the context of the work environment it is incumbent on the employee to back down from confrontation"). LEC's decision to terminate Smith for fighting does not ratify Peeler's assault. It reinforces the important goal of providing a violence-free environment for employees. Consequently, the self-defense argument does not support a claim of ratification.

{¶ 12} Next, Smith argues that LEC had a duty to protect her from workplace violence. An employer's duty to protect its employees is activated when they know or should have known that there was a substantial risk of harm to the employees on

the premises of the business that are in the possession and control of the owner. *Gillotti v. Rimedio*, 11th Dist. Trumbull No. 2003-Ohio-5708, ¶ 28 (11th Dist.).

{¶ 13} However, this argument, too, fails to support a finding that LEC ratified Peeler's conduct. Smith acknowledged in her deposition that she was unaware of any animosity Peeler felt for her until the incident. Smith did not report any workplace violence until after the assault and battery. After they investigated, LEC fired Peeler. Smith failed to establish that LEC knew or should have known about a risk of harm posed by Peeler. This argument also fails to demonstrate ratification.

{¶ 14} Only genuine issues of material fact can prevent a trial court from granting a motion for summary judgment. Civ.R. 56; *Robinson v. Brown*, 1989 Ohio App. LEXIS 595, at *6 (Feb. 21, 1989). The sole issue, therefore, is whether looking at the evidence in a light most favorable to Smith, LEC was entitled to judgment as a matter of law and there remained no genuine issue of material fact to be litigated. LEC established that Peeler was not acting within the scope of employment and that LEC did not ratify her conduct. Smith has failed to counter LEC's evidence by establishing a genuine issue of material fact that LEC ratified Peeler's conduct.

{¶ 15} Accordingly, the first assignment of error is overruled.

**Wrongful Termination against Public Policy**

{¶ 16} In the second, third, and fourth assignments of error, Smith challenges her termination as violating public policy and has elected to combine these arguments. App.R. 16(A)(7) requires an appellant to craft a separate argument

for each assignment of error. *Heigel v. MetroHealth Sys.*, 2024-Ohio-1471, ¶ 16 (8th Dist.). A court of appeals may disregard any assignment of error for which a separate argument has not been made. *Id.*, citing App.R. 12(A)(2). While we may consider assignments of error in the interest of judicial fairness, we will disregard those assignments that are insufficiently supported. *Heigel* at ¶ 16. In the second assignment of error, Smith alleges that the trial court considered nonexistent facts and ignored evidence that favored Smith against LEC. However, Smith has failed to develop this assignment, as required. App.R. 16(A)(7). Consequently, we will not consider Smith's second assignment of error and it is overruled. Accordingly, we will confine our review to Smith's third and fourth assignments of error.

{¶ 17} Ohio is traditionally an employment-at-will State; accordingly, either the employer or employee may terminate the employment relationship for any cause or no cause. *Miracle v. Ohio Dept. of Veterans Servs.,* 157 Ohio St.3d 413 (2019) ¶ 11, citing *Collins v. Rizkana*, 73 Ohio St.3d 65, 67 (1995). However, the Ohio Supreme Court identified an exception to the traditional rule, recognizing that a termination that violates public policy could be actionable. *Id.*, citing *Greeley v. Miami Valley Maintenance Contrs., Inc.,* 49 Ohio St.3d 228 (1990), paragraph one of the syllabus. In *Greeley*, the Supreme Court recognized that an exception to the employment-at-will doctrine was warranted when an employee was discharged or disciplined for reasons that are prohibited by statute. *Greeley,* paragraph one of the syllabus. The Court later broadened the rule to include terminations that violated

public policy in a state or federal constitution, statute, administrative regulation, or in common law.  *Collins v. Rizkana*, 73 Ohio St.3d 65, 69.

{¶ 18} To establish wrongful termination against public policy, a plaintiff must establish all of the following:

> 1. That [a] clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the clarity clement).
>
> 2. That dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the jeopardy element).
>
> 3. The plaintiff's dismissal was motivated by conduct related to the public policy (the causation element).
>
> 4. The employer lacked overriding legitimate business justifications for the dismissal (the overriding justification element).

*Id.*, quoting H. Perritt, *The Future of Wrongful Dismissal Claims: Where Does Employer Self Interest Lie*?, 58 U.Cin.L.Rev. 397, 398-399 (1989).

{¶ 19} It is well settled that the clarity and jeopardy elements are issues of law for the court's determination, while the causation and overriding justification elements are questions of fact for the finder of fact.  *Dohme v. Eurand Am., Inc.*, 2011-Ohio-4609, ¶ 17, citing *Collins* at 70.

{¶ 20} In its motion for summary judgment, LEC argued that Smith failed to establish any of the elements necessary for a claim of wrongful termination against public policy.  The trial court ultimately agreed with LEC on the first and fourth elements.  The court determined that Smith failed to point to a public policy that was applicable to this case (the clarity element) and that LEC presented sufficient

evidence to establish an overriding legitimate business justification for Smith's termination (the overriding justification element). We will address the clarity element first because it is dispositive.

{¶ 21} Smith argues that the trial court erred when it found that she failed to identify a public policy applicable to this case. We find this argument lacks merit.

{¶ 22} Notably, in her brief Smith devotes one paragraph to discuss this issue and does not discuss the elements of the public policy but refers us to a number of supporting cases without discussion of those cases and cites to the record before the trial court, also without discussion. The cases cited by Smith are inapplicable to the facts of this case.

{¶ 23} Smith first points to *Pytlinski v. Brocar Prods.*, 94 Ohio St.3d 77 (2002). Pytlinski dealt with an employee who was fired after reporting alleged Occupational Safety and Health Administration ("OSHA") violations to the employer. As a result, the Ohio Supreme Court found that "retaliation against employees who file complaints regarding workplace safety clearly contravenes the public policy of Ohio." *Id.* at 80, citing *Kulch v. Structural Fibers, Inc.*, 78 Ohio St.3d 134, 152-153 (1997).

{¶ 24} Smith next cites *McKnight v. Goodwill Industries of Akron, Inc.*, 2000 Ohio App. LEXIS 4014 (9th Dist. Sep. 6, 2000), and *Bailey v. Priyanka Inc.*, 2001-Ohio-1410 (9th Dist.) Both cases addressed the public policy in favor of reporting criminal conduct. In *McKnight*, one of the plaintiffs filed a police report after receiving threats from their supervisor on the job as well as outside of work. In

*Bailey*, the plaintiff reported to police that the supervisor had failed to turn over marijuana found on the job to the police. In each case, after the plaintiffs reported criminal conduct, they were terminated from their positions. Each case recognized a public policy that protected employees from termination when they pursued the important public policy of reporting criminal conduct.

{¶ 25} These cases are distinguishable because there is no evidence that Smith reported threats of violence or workplace safety issues prior to the incident; in fact, she was completely unaware of any potential violence before the incident occurred. Furthermore, there is no evidence that LEC terminated Smith because she reported criminal conduct. After Smith's report, LEC investigated the incident and terminated Smith for fighting, not for her decision to report the incident. Accordingly, the trial court did not err when it found that Smith failed to identify a public policy that was applicable to this situation.

{¶ 26} Accordingly, LEC met its initial burden of establishing that it was entitled to judgment as a matter of law and Smith has failed to rebut that presumption and establish that there remained genuine issues of material fact. Smith needed to establish all four elements of wrongful termination against public policy to prevail. We need not consider whether LEC had a legitimate overriding business justification for the termination. *Heigel,* 2024-Ohio-1471, ¶ 20 ("A failure on any one of the elements is fatal to [the] claims.").

{¶ 27} Based on the foregoing, the third assignment of error is overruled, rendering the fourth assignment of error moot.

**{¶ 28}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EMANUELLA D. GROVES, PRESIDING JUDGE

ANITA LASTER MAYS, J., and
FRANK DANIEL CELEBREZZE, III, J., CONCUR