[Cite as *Pinkerton v. J&H Reinforcing*, 2012-Ohio-1606.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
SCIOTO COUNTY

| | | |
|---|---|---|
| CRAIG D. PINKERTON, et al, | : | |
| | : | |
| Plaintiffs-Appellants. | : | |
| | : | Case Nos. 10CA3386 & |
| v. | : | 10CA3388 |
| | : | |
| J&H REINFORCING AND | : | <u>DECISION AND</u> |
| STRUCTURAL ERECTORS, INC., et al, | : | <u>JUDGMENT ENTRY</u> |
| | : | |
| Defendants-Appellees. | : | Filed:  April 4, 2012 |

_____

<u>APPEARANCES:</u>

Michael S. Miller and Craig P. Scott, Volkema Thomas Miller & Scott LPA, Columbus, Ohio, for Appellants, Craig D. Pinkerton and Melissa McCrary Pinkerton.

Mike Dewine, Ohio Attorney General; Andrew D. Sonnek and Greg A. Goldblatt, Sonnek & Howard, Ltd., Cincinnati, Ohio for Appellant, Ohio Bureau of Workers' Compensation.[1]

David G. Jennings and J. Stephen Teetor, Isaac, Brant, Ledman & Teetor, LLP, Columbus, Ohio, for Appellee, J&H Reinforcing and Structural Erectors, Inc.

William B. Benson and Mark C. Melko, Wiles, Boyle, Burkholder & Bringardner Co., L.P.A., Columbus, Ohio, for Appellee, BBL-Carlton, LLC.

_____

Kline, J.:

**{¶1}**     Craig D. Pinkerton, Melissa McCrary Pinkerton, and the Ohio Bureau of Workers' Compensation (hereinafter the "Workers' Compensation Bureau") appeal the judgment of the Scioto County Court of Common Pleas.  The appellants claim that the negligence of J&H Reinforcing and Structural Erectors, Inc. (hereinafter "J&H Reinforcing"), and BBL-Carlton, LLC (hereinafter "BBL-Carlton"), contributed to injuries

---

[1] Richard Cordray was the Ohio Attorney General when this appeal was filed.

that Craig Pinkerton suffered on a construction jobsite.  The trial court, however, granted summary judgment to both J&H Reinforcing and BBL-Carlton.

**{¶2}** On appeal, the appellants contend that the trial court should not have granted summary judgment to either of the appellees.  We disagree.  As a matter of law, neither J&H Reinforcing nor BBL-Carlton owed a duty of care to Craig Pinkerton.  Furthermore, we find the following: (1) there are no genuine issues of material fact; (2) both J&H Reinforcing and BBL-Carlton are entitled to judgment as a matter of law on all of the appellants' claims; and (3) reasonable minds can come to just one conclusion as to all of the appellants' claims, and that conclusion is adverse to the appellants.  Accordingly, we affirm the judgment of the trial court.

I.

**{¶3}** On June 17, 2007, Craig Pinkerton was injured while working on a construction site at an elementary school.  Craig Pinkerton worked for Dixon Electrical, which was the prime electrical contractor on the project.  J&H Reinforcing was the prime contractor for general trades, and BBL-Carlton was the construction manager.

**{¶4}** During the construction project, the various contractors stored equipment in the mechanical room.  To make room for the equipment, somebody removed the double doors and the mullion from the mechanical room's doorway.  A "mullion" is "a slender vertical usually nonstructural bar or pier forming a division between * * * doors[.]" Webster's Third New International Dictionary, Unabridged (2002).  However, after the doors and the mullion were removed, the "mullion clip" was left exposed in the floor. This particular mullion clip was a metal bracket, approximately one-to-two inches wide, and approximately a half-inch high.

**{¶5}** On the day of the accident, Craig Pinkerton walked through the equipment room doorway and allegedly tripped over the exposed mullion clip. As a result, his Achilles tendon was severed.

**{¶6}** Because of his injuries, Craig Pinkerton applied for and received compensation and medical benefits from the Workers' Compensation Bureau.

**{¶7}** On October 23, 2008, Craig and Melissa Pinkerton filed a complaint against J&H Reinforcing, BBL-Carlton, and various unnamed defendants. The complaint alleged that, because of the exposed mullion clip, the defendants "negligently created and/or maintained a dangerous condition[.]" Additionally, Melissa Pinkerton claimed loss of consortium, and, in later filings, the Workers' Compensation Bureau asserted subrogation rights. That is, the Workers' Compensation Bureau claimed that it was "entitled to recover [the compensation and medical benefits] paid to or on behalf" of the Pinkertons. Complaint of New Party Plaintiff Ohio Bureau of Workers' Compensation.

**{¶8}** Despite extensive discovery, it could not be determined who, exactly, had removed the doors and the mullion. Several witnesses testified that employees of J&H Reinforcing would have been responsible because J&H Reinforcing was the independent contractor in charge of doorframes. According to these witnesses, union rules would have prevented the employees of any other independent contractor from removing the doors and the mullion. But an employee of BBL-Carlton testified (1) that J&H Reinforcing was not contractually responsible for removing the doors and the mullion and (2) that anybody could have done it. Significantly, there was no evidence that either J&H Reinforcing or BBL-Carlton had directed the activities of Dixon Electrical or Craig Pinkerton. Furthermore, there was no evidence that either J&H Reinforcing or

BBL-Carlton had given permission for the critical acts that led to Craig Pinkerton's injuries.

{¶9}     Eventually, in two separate entries, the trial court granted summary judgment to both J&H Reinforcing and BBL-Carlton.  The trial court found, in part, that neither J&H Reinforcing nor BBL-Carlton had actively participated in the work of Dixon Electrical or Craig Pinkerton.  As a result, the trial court dismissed the complaint of the plaintiffs and the complaint of the Ohio Bureau of Workers' Compensation.  Four days later, the trial court filed the same two entries but added Civ.R. 54(B) language ("no just cause for delay").

{¶10}     Craig D. Pinkerton, Melissa McCrary Pinkerton, and the Workers' Compensation Bureau appeal and assert the following three assignments of error: I. "THE TRIAL COURT ERRED TO THE SUBSTANTIAL PREJUDICE OF PLAINTIFFS-APPELLANTS IN GRANTING SUMMARY JUDGMENT TO THE DEFENDANT-APPELLEE J&H REINFORCING AND STRUCTURAL ERECTORS, INC."  II. "THE TRIAL COURT ERRED TO THE SUBSTANTIAL PREJUDICE OF PLAINTIFFS-APPELLANTS IN GRANTING SUMMARY JUDGMENT TO THE DEFENDANT-APPELLEE BBL-CARLTON, L.L.C."  And, III. "THE TRIAL COURT ERRED TO THE SUBSTANTIAL PREJUDICE OF PLAINTIFFS-APPELLANTS IN FAILING TO GIVE ANY WEIGHT TO THE DEPOSITION AND AFFIDAVIT TESTIMONY OF RYAN STEWART."

{¶11}     The Pinkertons asserted these assignments of error in their appellate brief. And "[i]n the interest of brevity and [for] the convenience of the Court," the Workers' Compensation Bureau adopted the Pinkertons' assignments of error and issues

presented for review. Brief of Appellant Ohio Bureau of Workers' Compensation at 4. Therefore, when referring to the appellants collectively, we will use the term "Pinkertons."

                                   II.

**{¶12}**     Before addressing the Pinkertons' first-and-second assignments of error, we must note a procedural deficiency. That is, in their appellate brief, the Pinkertons have failed to separately argue their first-and-second assignments of error as required by App.R. 16(A)(7). Instead, the Pinkertons have presented just one argument in support of both assignments of error. Under App.R. 12(A)(2), we may choose to disregard any assignment of error that an appellant fails to separately argue. Therefore, we could exercise our discretionary authority to summarily overrule the Pinkertons' first-and-second assignments of error. See *Newman v. Enriquez*, 171 Ohio App.3d 117, 2007-Ohio-1934, at ¶18; *Mtge. Electronic Registrations Sys. v. Mullins*, 161 Ohio App.3d 12, 2005-Ohio-2303, at ¶22, citing *Park v. Ambrose* (1993), 85 Ohio App.3d 179, 186; *State v. Caldwell* (1992), 79 Ohio App.3d 667, 677, fn. 3. In the interest of justice, however, we choose to address the Pinkertons' first-and-second assignments of error.

                                   III.

**{¶13}**     In their first-and-second assignments of error, the Pinkertons contend that the trial court should not have granted the appellees' respective motions for summary judgment. "Because this case was decided upon summary judgment, we review this matter de novo, governed by the standard set forth in Civ.R. 56." *Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4559, at ¶8. Summary judgment is appropriate only when the following have been established: (1) there is no genuine issue as to any material

fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to only one conclusion, and that conclusion is adverse to the nonmoving party. Civ.R. 56(C). See, also, *Bostic v. Connor* (1988), 37 Ohio St.3d 144, 146; *Grimes v. Grimes*, Washington App. No. 08CA35, 2009-Ohio-3126, at ¶14. In ruling on a motion for summary judgment, the court must construe the record and all inferences that arise from it in the opposing party's favor. *Doe v. First United Methodist Church*, 68 Ohio St.3d 531, 535, 1994-Ohio-531, superseded by statute on other grounds.

**{¶14}** The burden of showing that no genuine issue of material fact exists falls upon the party who moves for summary judgment. *Dresher v. Burt*, 75 Ohio St.3d 280, 294, 1996-Ohio-107. However, once the movant supports his or her motion with appropriate evidentiary materials, the nonmoving party "may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in [Civ.R. 56], must set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E). See, also, *Dresher* at 294-295; *Grimes* at ¶15.

**{¶15}** "In reviewing whether an entry of summary judgment is appropriate, an appellate court must independently review the record and the inferences that can be drawn from it to determine if the opposing party can possibly prevail." *Grimes* at ¶16 (citation omitted). "Accordingly, we afford no deference to the trial court's decision in answering that legal question." *Morehead v. Conley* (1991), 75 Ohio App.3d 409, 412. See, also, *Schwartz v. Bank One, Portsmouth, N.A.* (1992), 84 Ohio App.3d 806, 809; *Grimes* at ¶16.

IV.

**{¶16}** For ease of analysis, we will review the Pinkertons' second assignment of error out of order. In their second assignment of error, the Pinkertons contend that the trial court should not have granted BBL-Carlton's motion for summary judgment. Essentially, the Pinkertons contend that there are genuine issues of material fact as to whether BBL-Carlton's negligence contributed to Craig Pinkerton's injuries.

**{¶17}** "It is well-settled that in a negligence suit between private parties, the plaintiff must prove (1) the existence of a legal duty, (2) the defendant's breach of that duty, and, (3) that the breach was the proximate cause of harm and damages." *Scott v. Marckel*, Defiance App. No. 4-07-27, 2008-Ohio-2743, at ¶19, citing *Nationwide Mut. Ins. Co. v. Am. Heritage Homes Corp.*, 167 Ohio App.3d 99, 2006-Ohio-2789, at ¶12. "In tort law, whether a defendant owes a duty to a plaintiff depends upon the relationship between them." *Huston v. Konieczny* (1990), 52 Ohio St.3d 214, 217. Furthermore, "[t]he existence of a duty in a negligence action is a question of law for the court to determine." *Mussivand v. David* (1989), 45 Ohio St.3d 314, 318. Here, BBL-Carlton argues that it did not owe a duty of care to Craig Pinkerton. And because there is no evidence that BBL-Carlton actively participated in Dixon Electrical's job operations, we agree.

**{¶18}** As a general rule, "Where an independent contractor undertakes to do work for another in the very doing of which there are elements of real or potential danger and one of such contractor's employees is injured as an incident to the performance of the work, no liability for such injury ordinarily attaches to the one who engaged the services of the independent contractor." *Wellman v. E. Ohio Gas Co.* (1953), 160 Ohio St. 103, at paragraph one of the syllabus. "In other words, when an employee of a

subcontractor is injured while performing work for his or her employer that is inherently dangerous, the owner and/or general contractor owes no duty of care to that employee." *Wyczalek v. Rowe Constr. Serv. Co.*, 148 Ohio App.3d 328, 2001-Ohio-3104, at ¶21, citing *Sopkovich v. Ohio Edison Co.*, 81 Ohio St.3d 628, 636-37, 1998-Ohio-341. Here, Dixon Electrical was an independent subcontractor, and BBL-Carlton was the construction manager. Under *Wellman*, a construction manager is akin to a general contractor. See *Wyczalek* at ¶22. Furthermore, Ohio courts have long recognized that construction work is inherently dangerous. See *Bond v. Howard Corp.*, 72 Ohio St.3d 332, 336, 1995-Ohio-81 ("A construction site is inherently a dangerous setting.") (citation omitted); *Lillie v. Meachem*, Allen App. No. 1-09-09, 2009-Ohio-4934, at ¶26; *Anderson v. Snider Cannata Co.*, Cuyahoga App. No. 91801, 2009-Ohio-4363, at ¶23. Therefore, we find that the general rule in *Wellman* applies to the present case.

**{¶19}** Despite the general rule in *Wellman*, BBL-Carlton would have owed a duty of care to Carl Pinkerton *if* BBL-Carlton had actively participated in Dixon Electrical's job operations. The active-participation "exception occurs when the * * * construction manager[] actively participates in the subcontractor's job operations by either directing or exercising 'control over the work activities of the independent contractor's employees[.]'" *Wyczalek* at ¶22, quoting *Sopkovich* at 642-43. A "construction manager, who has less involvement with the field operations on a day-to-day basis, does not rise to the level of active participation when it merely exercises a general supervisory role over a project." *Wyczalek* at ¶23, citing *Bond* at syllabus. Rather, the "construction manager must have directed the activity that resulted in the injury and/or given permission for the critical acts that led to the employee's injury." Id.

**{¶20}**     Here, there is no evidence that BBL-Carlton actively participated in Dixon

Electrical's job operations.  In fact, the Pinkertons do not even allege active participation

on behalf of BBL-Carlton.  Therefore, as a matter of law, BBL-Carlton did not owe a duty

of care to Craig Pinkerton.[2]  And without a duty of care, there can be no negligence.

See *Jeffers v. Olexo* (1989), 43 Ohio St.3d 140, 142.

**{¶21}**     Accordingly, BBL-Carlton is entitled to judgment as a matter of law, and we

overrule the Pinkertons' second assignment of error.

V.

**{¶22}**     In their first assignment of error, the Pinkertons contend that the trial court

should not have granted J&H Reinforcing's motion for summary judgment.  Essentially,

the Pinkertons contend that there are genuine issues of material fact as to whether J&H

Reinforcing's negligence contributed to Craig Pinkerton's injuries.

A. Duty of Ordinary Care or Active Participation?

**{¶23}**     Like BBL-Carlton, J&H Reinforcing contends that it did not owe a duty of care

to Craig Pinkerton.  As we noted earlier, the existence of a duty depends upon the

relationship between the particular parties.  See *Huston* at 217.  And significantly, J&H

Reinforcing was not an owner, general contractor, or construction manager.  Instead,

---

[2] In relation to either J&H Reinforcing or BBL-Carlton, the Pinkertons cannot establish a duty of care under the frequenter statute.  "R.C. 4101.11 requires every employer to furnish a place of employment that is safe for its employees and for frequenters of the place of employment.  However, '[t]he duty to frequenters of places of employment, set forth in R.C. 4101.11, does not extend to hazards which are inherently and necessarily present because of the nature of the work performed, where the frequenter is the employee of an independent contractor.' *Eicher v. United States Steel Corp.* (1987), 32 Ohio St.3d 248[,] syllabus.  Instead, the primary responsibility for protecting such an employee lies with his employer.  Id., at 250[.]" *Kratzer v. Gen. Motors Corp.* (Feb. 27, 1998), Montgomery App. Nos. 16590, 16593, and 16594.

J&H Reinforcing and Dixon Electrical were both independent subcontractors on the same construction project.

**{¶24}** The Supreme Court of Ohio discussed the duty that one independent subcontractor owes to a second independent subcontractor in *Kucharski v. Natl. Engineering Contracting Co.*, 69 Ohio St.3d 430, 1994-Ohio-320. As the court held, "An independent contractor who lacks a contractual relationship with a second independent contractor owes no affirmative duty beyond that of ordinary care to the employees of the second contractor, where the first contractor does not supervise or actively participate in the second contractor's work." *Kucharski* at syllabus. The *Kucharski* syllabus does not, however, mention the duty of care that one independent subcontractor owes to a second independent subcontractor in an inherently dangerous work environment. Regardless, the Pinkertons rely on *Kucharski* and argue that J&H Reinforcing owed Craig Pinkerton a duty of ordinary care, regardless of either (1) the inherent danger of the construction site or (2) J&H Reinforcing's level of participation with Dixon Electrical. But J&H Reinforcing argues that it did not owe a duty of care to Craig Pinkerton because (1) the construction site was inherently dangerous and (2) J&H Reinforcing did not actively participate in Dixon Electrical's job operations.

**{¶25}** Because the construction site was inherently dangerous, we believe that J&H Reinforcing's active participation was necessary to establish a duty of care to Craig Pinkerton. Here, we agree with the Seventh Appellate District's reasoning in *Solanki v. Doug Freshwater Contracting, Inc.*, Jefferson App. No. 06-JE-39, 2007-Ohio-6703. In *Solanki*, the court held that "unrelated parties hired to work on the same premises" do not owe each other a duty of care when (1) there is no active participation and (2) the

work is inherently dangerous. Id. at ¶39-44. As the court explained, "The rationale behind the 'inherently dangerous' cases is that if a property owner or general contractor hires an independent contractor or subcontractor to perform certain work, the property owner or general contractor may assume a duty to the worker to keep the work premises safe. However, if the property owner or general contractor hires the independent contractor or subcontractor to perform inherently dangerous work, then that duty is eliminated because of the intrinsic risk in the work, of which the independent contractor or subcontractor is aware and should guard against. This reasoning applies to the fact pattern at hand. While the [appellee] did not owe [the appellant] a duty by way of hiring him to perform a job, as stated above, they did owe him a duty in performing their work to use 'ordinary and reasonable care' so as to not cause him injuries. If, however, [the appellant] was performing work that was inherently dangerous when he was injured, then the [appellee] did not owe him a duty because he should have been aware of the dangers of his work and protected himself against them." Id. at ¶44.

**{¶26}** We find the reasoning in *Solanki* persuasive and apply it to the present case. Otherwise, J&H Reinforcing would have owed Craig Pinkerton a greater duty of care than an owner, general contractor, or construction manager would have. The Supreme Court of Ohio has held that "[a] general contractor who has not actively participated in the subcontractor's work, does not, merely by virtue of its supervisory capacity, owe a duty of care to employees of the subcontractor who are injured while engaged in inherently dangerous work." *Cafferkey v. Turner Constr. Co.* (1986), 21 Ohio St.3d 110, syllabus. Thus, absent active participation, a general contractor has *no duty of care* to

an independent subcontractor in an inherently dangerous situation.  This is true even if the general contractor has supervised the independent subcontractor's work.

**{¶27}**     Here, J&H Reinforcing did not supervise the work of Dixon Electrical or Craig Pinkerton.  Instead, J&H Reinforcing and Dixon Electrical were both independent subcontractors on the same inherently dangerous worksite.  And we do not believe that, absent active participation, J&H Reinforcing should have owed some duty to Craig Pinkerton while the general contractor would have owed him no duty whatsoever. Because of its supervisory capacity, the general contractor would have had more control over Craig Pinkerton's work than J&H Reinforcing had.  Thus, we will not apply a heightened duty of care to an entity that had less actual influence over Craig Pinkerton's work environment.

**{¶28}**     Finally, *Kucharski* expressly "approved and followed" the holding in *Cafferkey*. See *Kucharski* at syllabus.  Therefore, it is logical to assume that *Cafferkey*'s no-duty-without-active-participation rule would extend to fellow independent subcontractors under *Kucharski*.

**{¶29}**     Accordingly, to establish that J&H Reinforcing owed a duty to Craig Pinkerton, the Pinkertons must show that J&H Reinforcing actively participated in Dixon Electrical's job operations.

B. What Does Active Participation Mean?

**{¶30}**     When discussing the relationship between two independent subcontractors, it is not entirely clear what "active participation" means.  The Supreme Court of Ohio announced the duty of care between independent subcontractors in *Kucharski*.  See *Kucharski* at syllabus.  But in *Kucharski*, the court did not describe what it means for

one independent subcontractor to actively participate in the work of another independent subcontractor.

**{¶31}** After *Kucharski*, the Supreme Court explained the meaning of active participation in *Bond*. But the syllabus in *Bond* expressly relates to the duty that *general contractors* owe to independent contractors. As the court held, "For purposes of establishing liability to the injured employee of an independent subcontractor, 'actively participated' means that the *general contractor* directed the activity which resulted in the injury and/or gave or denied permission for the critical acts that led to the employee's injury, rather than merely exercising a general supervisory role over the project." *Bond* at syllabus (emphasis added).

**{¶32}** In *Sopkovich*, the Supreme Court of Ohio again elaborated on active participation. The court held that "active participation giving rise to a duty of care may be found to exist where a *property owner* either directs or exercises control over the work activities of the independent contractor's employees, or where the owner retains or exercises control over a critical variable in the workplace." *Sopkovich* at 643 (emphasis added). Therefore, the holding in *Sopkovich* relates only to property owners.

**{¶33}** Because the Supreme Court of Ohio did not mention *Kucharski* in either *Bond* or *Sopkovich*, the court has yet to define what specifically constitutes active participation between independent subcontractors. Nevertheless, the Seventh District Court of Appeals applied *Bond*'s definition of active participation to this type of relationship. See *Solanki* at ¶¶30-32, 42. See, also, *Kratzer*; but, see, *Nibert v. Columbus/Worthington Heating & Air Conditioning*, Fayette App. No. CA2009-08-015, 2010-Ohio-1288, at ¶22 ("Applying the 'active participation' definition as stated in *Bond* or *Sopkovich* is often

unworkable in situations involving multiple subcontractors since the roles among subcontractors are typically not supervisory in nature. Subcontractors are usually employed to perform separate tasks, but, as here, these tasks often overlap in some manner or involve the same workspace although no supervisory relationship exists.").

**{¶34}** Like the Seventh Appellate District, we also choose to follow *Bond*'s definition of active participation. As we noted, *Kucharski* establishes the duty that one independent subcontractor owes to another independent subcontractor. And significantly, both *Bond* and *Kucharski* apply and follow the same case: *Cafferkey*. See *Bond* at syllabus; *Kucharski* at syllabus. Therefore, because both *Bond* and *Kucharski* follow *Cafferkey*, we believe (1) that *Bond* and *Kucharski* are somewhat analogous and (2) that it is appropriate to apply *Bond*'s definition of active participation to the syllabus in *Kucharski*. Thus, in the present case, we will apply the following definition of active participation: For purposes of establishing liability to the injured employee of an independent subcontractor, 'actively participated' means that a fellow independent contractor directed the activity which resulted in the injury and/or gave or denied permission for the critical acts that led to the employee's injury. See *Bond* at syllabus.

**{¶35}** The Pinkertons rely on *Sopkovich* and argue that J&H Reinforcing demonstrated active participation by "exercis[ing] actual control over the injury causing variable in the workplace[.]" Brief of Plaintiffs-Appellants at 27. That is, the Pinkertons contend that J&H Reinforcing exercised control over the mechanical room's doorframe. In our view, however, the holding in *Sopkovich* does not affect the duty that one independent contractor owes to another independent contractor. "Although the *Sopkovich* court did address active participation, it limited it strictly to the owner of the

property, Ohio Edison, and its exclusive control and communication over deactivation of electrical lines." *Rockett v. Newark Builders Supply, Inc.*, 169 Ohio App.3d 379, 2006-Ohio-5715, at ¶21. In fact, throughout *Sopkovich*, the Supreme Court of Ohio expressly limited its holding to property owners. And unlike *Bond* and *Kucharski*, the court did not base *Sopkovich* on the holding in *Cafferkey*. See *Sopkovich* at 642-43 ("As is clear from *Hirschbach,* and from cases preceding and postdating *Hirschbach* * * *, a property owner's retention of possession and control over the work area of an independent contractor's employees has always been an integral part of the active-participation analysis, where, as here, the owner's liability is at issue."). Accordingly, the Pinkertons cannot show active participation by claiming that J&H Reinforcing exercised control over the injury causing variable; i.e., the doorway.

**{¶36}** Applying our definition of active participation, there is no evidence that J&H Reinforcing directed any of Dixon Electrical's activities. Furthermore, there is no evidence that J&H Reinforcing gave or denied permission for the critical acts that led to Craig Pinkerton's injury. Therefore, as a matter of law, J&H Reinforcing did not actively participate in Dixon Electrical's job operations. And as a result, J&H Reinforcing did not owe a duty of care to Craig Pinkerton. Without a duty of care, there can be no negligence. See *Jeffers* at 142.

C.

**{¶37}** Accordingly, J&H Reinforcing is entitled to judgment as a matter of law, and we overrule the Pinkertons' first assignment of error.

VI.

**{¶38}**     In their third assignment of error, the Pinkertons contend that the trial court should have given more weight to the testimony of a particular witness.  However, based on our resolution of the first two assignments of error, we find the Pinkerton's third assignment of error to be moot.  The witness in question did not testify that any of the defendants had directed the activities of Dixon Electrical or Craig Pinkerton.  Furthermore, this particular witness did not testify that any of the defendants had given or denied permission for the critical acts that led to Craig Pinkerton's injury.  Instead, the witness testified that, in his opinion, employees of J&H Reinforcing had removed the doors and the mullion.  Because neither BBL-Carlton nor J&H Reinforcing owed a duty of care to Craig Pinkerton, this testimony is immaterial.  Accordingly, we decline to address the Pinkertons' third assignment of error.  See App.R. 12(A)(1)(c).

VII.

**{¶39}**     After construing the record and all inferences therefrom in the Pinkertons' favor, we find the following: (1) there are no genuine issues of material fact; (2) both J&H Reinforcing and BBL-Carlton are entitled to judgment as a matter of law on all of the Pinkertons' claims; and (3) reasonable minds can come to just one conclusion as to all of the appellants' claims, and that conclusion is adverse to the Pinkertons.  Accordingly, we affirm the judgment of the trial court.

<strong>JUDGMENT AFFIRMED.</strong>

## <u>JUDGMENT ENTRY</u>

It is ordered that the JUDGMENT BE AFFIRMED.  Appellants shall pay the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Scioto County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.  Exceptions.

Harsha, J.:  Concurs in Judgment and Opinion as to Assignment of Error No. II.
    Dissents as to Assignments of Error No. I and III.
Abele, P.J.: Concurs in Judgment Only.


For the Court


BY:_____
   Roger L. Kline, Judge



### NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**