### HOLBROOK, Appellant,

v.

### LEXISNEXIS d.b.a. Reed Elsevier, Appellee.

[Cite as *Holbrook v. LexisNexis*, 169 Ohio App.3d 345, 2006-Ohio-5762.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 21345.

Decided Oct. 27, 2006.

Dwight Washington, for appellant.

Karl R. Ulrich and Danyelle S.T. Coleman, for appellee.

GRADY, Presiding Judge.

{¶ 1} This is an appeal from a final order of the court of common pleas granting defendant's motion for summary judgment on plaintiff's claims for relief alleging employment discrimination on account of his race.

{¶ 2} Plaintiff, Terence Holbrook, an African–American male, had been employed by defendant LexisNexis, d.b.a. Reed Elsevier, Inc. from July 16, 1984, until May 19, 2004, when he was fired for activating a fire alarm on May 13, 2004, at an exit in the northern stairwell of Building 5 on LexisNexis's campus in

Miamisburg. At the time of his termination, Holbrook was a senior index analyst. Before being promoted to senior index analyst, Holbrook had held the position of data analyst. Holbrook's wife and sister also work for LexisNexis.

{¶ 3} On May 13, 2004, Holbrook and two co-workers had plans to go to lunch, and they decided to meet in Building 5 at the first floor exit from the building in the northern stairwell at approximately 11:25 a.m. Mary Jane Battle, one of the two co-workers, accompanied Holbrook down the stairs to the ground level of the northern stairwell to await the arrival of the other co-worker, Cathy Commodore–Sands, who is Holbrook's sister. The stairwell contained the following from left to right as one proceeds down the steps from the second floor: an interior door into a hallway, a heating vent, a fire alarm, a badge-swipe device attached to a glass door leading out of the building, and a hallway leading to another interior door at the opposite end of the hallway. A surveillance camera in the stairwell digitally records activity around the glass exit door.

{¶ 4} Sands was not present when Holbrook and Battle descended the stairs. After Battle and Holbrook reached the ground floor, Battle walked down the hallway to the right and exited through the interior door to go to Sands's work area to locate her. Holbrook waited in the stairwell for them to join him. He was positioned between the heating vent and the fire alarm affixed to the glass exit door. The following sequence of events was recorded by the surveillance camera.

{¶ 5} At 11:26:14, a female employee entered the stairwell through the exterior glass door, said something to Holbrook, turned to her left, walked away from Holbrook, and exited the interior door to the building's first floor at the end of the hall opposite from Holbrook. She exited through the interior door at 11:26:24. According to the security record, at 11:26:26, Building 5's fire alarm was triggered by the pull station next to Holbrook. In order to activate this particular fire alarm, a two-step process was required: to push the alarm inwards and then to pull down the lever into a locked position. The image of a hand with a ring on it appeared in front of the pull station during the first frame of the videotape at 11:26:26, but the hand is no longer in front of the pull station during the second frame of the videotape at 11:26:26.[1] Holbrook wears a ring on his left hand, but he is right-handed.

{¶ 6} At 11:26:29, another LexisNexis employee, Krishna Mojumder, walked past Holbrook. Mojumder entered the stairwell from the interior door behind

---

1. When the videotape is run in reverse, it appears that another hand is in front of the alarm for a few seconds prior to when the hand with the ring appeared in front of the alarm. However, no individual at LexisNexis reviewed the video in reverse prior to Holbrook's termination.

Holbrook; that is, the door to the far left as one descends the stairs. This door often sticks when one tries to open it. The opening of the door startled Holbrook. Holbrook stood up from his seat on the heating vent to allow Mojumder to pass by. Holbrook spoke to Mojumder as Mojumder walked by Holbrook and exited the building. According to Mojumder, the alarm sounded shortly after he exited the building.[2]

{¶ 7} At 11:27:22, Battle came out through the same interior door as Mojumder had, which was the interior door at the opposite end of the hallway from the interior door which she had earlier entered. At 11:27:27, Holbrook and Battle walked the length of the hallway and exited via the interior door through which Battle had earlier exited. Holbrook and Battle then returned to the stairwell at 11:27:36 through the same door by which they had exited the stairwell. Holbrook waited by the fire alarm while talking to Battle. Numerous other individuals began coming down the stairs to exit the building at 11:28:04, apparently in response to the fire alarm. Battle and Holbrook exited the building through the glass door at 11:28:21 and went to lunch. Holbrook and Battle did not discuss the fire alarm during lunch.

{¶ 8} On the afternoon of May 13, 2004, the Vice President of Human Resources and a member of security at LexisNexis informed Mark Bernatz, LexisNexis's Director of Human Resources, that a false fire alarm had been activated in Building 5. Security determined that the fire alarm had been activated in the north stairwell near where Holbrook had stood while awaiting his two co-workers at approximately 11:26:26. Bernatz reviewed the digital video of the activity in the north stairwell of Building 5.

{¶ 9} The next day, May 14, 2005, Holbrook's direct supervisor, Tim Richison, met with Bernatz and Jill Sellers, Richison's supervisor, and viewed the digital video of the activity in the north stairwell. Bernatz and Richison then met with and questioned Holbrook about the false fire alarm. Holbrook adamantly denied activating the fire alarm. Richison and Bernatz told Holbrook that there was a camera in the stairwell that recorded the events of the previous day and that it had recorded an image of Holbrook's hand over the fire alarm at the time the alarm was activated. Holbrook asked to see the videotape, but his request was denied on advice of LexisNexis's legal counsel.

{¶ 10} According to Richison and Bernatz, Holbrook became visibly uncomfortable when informed that there was a video record of the activity in the stairwell. Holbrook stated that his hands have a habit of wandering, from which they

---

2. According to counsel for LexisNexis at oral argument, there is a short delay between the time when an alarm is triggered at LexisNexis and the time when the alarm sounds to let employees know that they should exit the building.

inferred that Holbrook may have accidentally triggered the fire alarm.[3] At the end of his meeting with Bernatz and Richison, Holbrook was placed on suspension, pending the completion of the investigation.

{¶ 11} Prior to the May 13, 2004 fire alarm incident, Holbrook had not had any misconduct or discipline on his record at LexisNexis. Indeed, Richison and Sellers stated that pulling the fire alarm would be totally out of character for Holbrook, and they were surprised that Holbrook would have pulled a fire alarm when there was no fire.

{¶ 12} Bernatz conducted the investigation on behalf of LexisNexis. He interviewed a number of LexisNexis employees, including security personnel, Richison, Sellers, Mojumder, and Dale Langley. None of these individuals witnessed Holbrook pulling the fire alarm, but there were witnesses that recalled seeing Holbrook standing in the stairwell around the time of the fire alarm.

{¶ 13} While Holbrook was suspended from work, Norma Doherty, a Caucasian female employee at LexisNexis, asked Sands to tell Holbrook that Doherty knew how it felt to be accused of pulling a fire alarm. Doherty, who was supervised by Dale Langley, was accused of intentionally pulling a fire alarm in Building 5 on February 20, 2002. At that time, Doherty was a senior data technician. Doherty was suspected of intentionally triggering the fire alarm because the swipe card system at the door near the fire alarm identified Doherty as exiting the building immediately after the fire alarm was activated.

{¶ 14} Doherty denied having intentionally triggered the fire alarm but conceded that she may have done so accidentally. At her deposition in this case, Langley recalled receiving an incident report from LexisNexis's security service that concluded that triggering of the fire alarm was accidental. Langley could not recall who deemed the triggering accidental. The incident report, prepared by Bill Tifft, the security facilitator, stated that "[t]he alarm did not appear to have been deliberately pulled but possibly bumped enough to set it off." Langley did not discipline Doherty.

{¶ 15} Ultimately, on May 19, 2005, Richison telephoned Holbrook and told him that he was being fired for intentionally pulling the fire alarm. Richison had the final say in firing Holbrook, but he relied on Bernatz's recommendation. Both Bernatz and Richison testified at their depositions that the videotape showing Holbrook's left hand in front of the fire alarm was the principal reason Holbrook was fired for intentionally activating a fire alarm.

---

3. At his deposition in the underlying action, Holbrook denied saying that his hands have a habit of wandering and did not recall saying that he may have triggered the alarm by mistake. Also, Holbrook stated at his deposition that it was common knowledge that there were cameras throughout LexisNexis's campus.

{¶ 16} It appears from the deposition of Mark Bernatz that the video cameras at LexisNexis's facilities were installed, and perhaps operated, by an outside contractor. It is unclear to what extent, if any, the contractor or its personnel interpreted or participated in the interpretation of the video recording that led LexisNexis to conclude that Holbrook had activated the fire alarm.

{¶ 17} On September 15, 2004, Holbrook commenced the underlying action against LexisNexis, alleging race discrimination in violation of R.C. 4112.02, wrongful discharge in violation of public policy, wrongful discharge in violation of due process, and defamation. LexisNexis filed a motion to dismiss, which was denied, and an answer. On May 3, 2005, LexisNexis filed a motion for summary judgment on all of Holbrook's claims. The trial court granted LexisNexis' motion on October 21, 2005. With respect to Holbrook's race-discrimination claim, which is the sole claim before us on this appeal, the trial court found that on the record before it Holbrook could not show that he was treated less favorably than a similarly situated employee outside the protected class, and that LexisNexis had established a legitimate, nondiscriminatory reason for terminating Holbrook's employment. Holbrook filed a timely notice of appeal from the trial court's order.

{¶ 18} On December 8, 2005, Holbrook moved the trial court for relief from judgment, pursuant to Civ.R. 60(B), on the basis of newly discovered evidence. On December 14, 2005, Holbrook moved this court for an order to remand the cause to the trial court to rule upon the Civ.R. 60(B) motion. We remanded the cause on January 16, 2006. Following an evidentiary hearing, the trial court denied Holbrook's Civ.R. 60(B) motion on January 27, 2006. Holbrook filed no notice of appeal from the denial of his Civ.R. 60(B) motion and instead requested this court to allow him to amend his previously filed notice of appeal to include the trial court's denial of his Civ.R. 60(B) motion. On April 5, 2006, we overruled Holbrook's request to amend his notice of appeal.

ASSIGNMENT OF ERROR

{¶ 19} "This court should reverse the court of common pleas' decision because Holbrook has established a prima facie race discrimination claim pursuant to O.R.C. 4112.02."

{¶ 20} In order to grant a motion for summary judgment, the court must find, construing the evidence most strongly in favor of the nonmoving party, that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 375 N.E.2d 46; Civ.R. 56(C). A genuine issue of material fact exists unless it is clear that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion is

made. Civ.R. 56(C). Credibility determinations cannot be resolved through the process of evaluating a request for the entry of a summary judgment. *Anderson v. Liberty Lobby, Inc.* (1986), 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202.

{¶ 21} Although the trial court granted summary judgment on all four of Holbrook's claims, the only claim before us is the race-discrimination claim Holbrook brought pursuant to R.C. 4112.02. R.C. 4112.02(A) provides that it is "an unlawful discriminatory practice: [f]or any employer, because of the race, color, religion, sex, national origin, disability, age or ancestry of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment."

{¶ 22} The critical element in R.C. 4112.02(A) is "because," which requires proof that the employer acted out of a discriminatory intent prohibited by that section. That intent may be provided by direct evidence, but, as the United States Supreme Court has recognized, "[o]utright admissions of impermissible racial motivation are infrequent and plaintiffs often must rely upon other evidence." *Hunt v. Cromartie* (1999), 526 U.S. 541, 553, 119 S.Ct. 1545, 143 L.Ed.2d 731. Consequently, the necessary intent may also be proved circumstantially, employing the four-prong test in *McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668, for a prima facie claim of discrimination.

{¶ 23} In order to establish a prima facie case of discriminatory treatment under R.C. 4112.02(A), a plaintiff must prove that (1) he is a member of a protected class, (2) he suffered an adverse employment action, (3) he was qualified for the position he held, and (4) he was either replaced by someone outside the protected class or was treated less favorably than a similarly situated employee not in the protected class. *Sivarajan v. Nationwide* (June 16, 1998), Franklin App. No. 97APE10–1426, 1998 WL 318873, citing *McDonnell Douglas,* 411 U.S. 792 at 802, 93 S.Ct. 1817, 36 L.Ed.2d 668.

{¶ 24} It is undisputed that Holbrook, who is African–American, can satisfy the first three prongs of the *McDonnell Douglas* test. The trial court granted summary judgment to LexisNexis on the fourth prong, which requires Holbrook to show either that he was replaced by someone outside the protected class or that comparable, nonprotected persons were treated more favorably than he was treated. On appeal, Holbrook argues that reasonable minds could find that he was similarly situated to Doherty, a LexisNexis employee outside the protected class, and that she was treated more favorably than he was. We agree.

{¶ 25} In order to be similarly situated, the employees typically "must have dealt with the same supervisor, have been subject to the same standards, and

have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Williams v. United Parcel Serv.* (July 19, 1995), Montgomery App. No. 14659, 1995 WL 444402, citing *Mitchell v. Toledo Hosp.* (C.A.6, 1992), 964 F.2d 577, 583. This test requires the plaintiff to demonstrate that he is similarly situated to the nonprotected employee in all relevant respects. *Ercegovich v. Goodyear Tire & Rubber Co.* (C.A.6, 1998), 154 F.3d 344, 353. Courts should make an independent determination as to the relevancy of a particular aspect of the plaintiff's employment status. Id. at 352.

{¶ 26} The trial court found that Holbrook and Doherty "are dissimilar in that, at the time of Mr. Holbrook's alleged misconduct, he was employed as a Senior Index Analyst; his supervisor was Timothy [Richison]; Mark Bernatz investigated his conduct; and there was evidence available, in the form of witness statements, a video recording, and a fire report, to support a finding that Mr. Holbrook's conduct was intentional. Ms. Doherty and Mr. Holbrook are similar only in that they were both subject to the same standards, or at least this fact is not in dispute, and they were both initially suspected of the same misconduct. * * * The most relevant point of dissimilarity between Ms. Doherty and Mr. Holbrook, which tends to explain the difference in their treatment, is the difference, as determined by the defendant after its investigation, in their conduct. The individual who investigated Ms. Doherty's conduct, having only Ms. Doherty's testimony and the badge swipe report which indicated that she exited the building at the time the alarm was activated, concluded that Ms. Doherty accidentally triggered the alarm. * * * After speaking with Mr. Holbrook about the incident, and reviewing the investigation of Mr. Bernatz, Mr. [Richison] concluded that Mr. Holbrook intentionally activated the fire alarm, and 'determined that Mr. Holbrook should be discharged.' "

{¶ 27} The fact that Holbrook was discharged while Doherty was retained does not portray a form of dissimilar treatment for purposes of the required prima facie showing, because the different conclusions LexisNexis reached concerning the allegations against the two employees support that dissimilarity in the treatment each received. The further inquiry is whether, in reaching those conclusions, LexisNexis treated Holbrook less favorably than it had treated Doherty.

{¶ 28} There are a number of relevant similarities between the situations involving Holbrook and Doherty: both were physically near a fire alarm control device in Building 5 on LexisNexis's campus at the time that security records reflected that the false fire alarms were triggered by the particular device, both fire alarms appear to have been the type that required a push-in and pull-down motion to trigger the alarm, both Holbrook and Doherty denied intentionally

triggering the fire alarm, both Holbrook and Doherty appear to have conceded at some point that it was possible that they had accidentally triggered the alarms, neither Holbrook nor Doherty denied being in the area in which the triggered fire alarm was situated, no eyewitness saw either of them pull the fire alarm, and both Holbrook and Doherty appear to have had clean records prior to the fire alarm incidents.

{¶ 29} LexisNexis concedes that the same policy regarding false fire alarms applied to both Holbrook and Doherty and that Holbrook would not have been fired under this policy had LexisNexis concluded that he accidentally activated the fire alarm. The allegations against both involved misconduct, not job performance, so this does not appear to be a case in which a difference in supervisor could justify different employment decisions. Therefore, it does not appear that any dissimilarity in job description or the identity of their supervisors should render Holbrook and Doherty dissimilar for *McDonnell Douglas* purposes. Rather, it appears that the sole, relevant dissimilarity between the two situations is how LexisNexis conducted its investigation in the two cases; more specifically, its reliance on the video that exists in Holbrook's case.

{¶ 30} The digital video record shows what appears to be Holbrook's hand in front of the fire alarm, but the video lacks clarity and depth. It is at best unclear whether Holbrook's hand pushes in and pulls down the lever of the alarm or just passes in front of the alarm while several feet distant from it. The images shown are digital recordings, in which several images are taken each second, and lack a continuous flow of movement. The video also lacks depth perspective, which is important in deciding how close Holbrook's hand was to the fire alarm switch and whether it was even close at all.

{¶ 31} Doherty was taken at her word with very little, if any, further investigation. On the other hand, Holbrook was not taken at his word, despite the facts that, like Doherty, he had a clean record at LexisNexis, and Richison and Sellers both stated that they were very surprised by the accusations against Holbrook. Holbrook was nevertheless denied the opportunity to see and explain the events portrayed on the video prior to his termination, even though the video was critical to LexisNexis's conclusion that Holbrook had intentionally set off the fire alarm and, further, that he lied about it.

{¶ 32} Holbrook was suspended and then fired while Doherty suffered no disciplinary action at all. Reasonable minds could find that LexisNexis was willing to accept Doherty's denials but unwilling to accept Holbrook's and that, consistent with its willingness to accept Doherty's explanation, LexisNexis should at least have allowed Holbrook to see and explain the conduct on his part that the video portrays. The employer's treatment of the two similarly situated employees was in that respect dissimilar, and reasonable minds could find that the

dissimilarity caused Holbrook to be treated less favorably than Doherty had been treated. Consequently, on the standard imposed by Civ.R. 56, the trial court erred when it found that Holbrook could not establish a prima facie case of race discrimination under the fourth prong of the test set forth in *McDonnell Douglas*.

{¶ 33} The trial court further found that even if Holbrook could establish a prima facie case pursuant to *McDonnell Douglas,* LexisNexis still was nevertheless entitled to summary judgment because LexisNexis had a legitimate, nondiscriminatory reason for firing Holbrook. Having set off a false fire alarm is surely a legitimate reason for an employee's termination. However, where the conclusion that the employee did that is itself tainted by discriminatory treatment, the reason for the termination is likewise tainted. Therefore, the trial court abused its discretion when it concluded that LexisNexis presented a legitimate, nondiscriminatory reason for firing Holbrook.

{¶ 34} We do not suggest that Holbrook will or should prevail on his claim of racial discrimination by proof of circumstantial evidence pursuant to the *McDonnell Douglas* test. Rather we conclude only that the evidence preserves a genuine issue of material fact regarding discriminatory intent and pretext, which precludes summary judgment on the claim Holbrook brought pursuant to R.C. 4112.02(A). Per Civ.R. 56, that evidence must be read most strongly in Holbrook's favor. In doing that, the subtleties of racial discrimination must be taken into account.

{¶ 35} The assignment of error is sustained and the trial court's October 21, 2005 order is reversed in part. The cause is remanded to the trial court for further proceedings consistent with this opinion.

Judgment reversed in part
and cause remanded.

DONOVAN, J., concurs.

FAIN, J., dissents.

FAIN, J., dissenting.

{¶ 36} Although I conclude that the issue is close, I would overrule the assignment of error and affirm the summary judgment that has been rendered for LexisNexis.

{¶ 37} In my view, Holbrook's situation is not similarly situated to Doherty's, because the proof available to the decision maker in the two situations was significantly different. In both instances, LexisNexis had an employee who admitted that he or she "might" have accidentally set off the fire alarm, but who denied having intentionally done so. But LexisNexis had stronger proof, both of

intentionality and of the very fact that the accused employee had, in fact, set off the fire alarm, in Holbrook's case. The stronger proof of the fact that Holbrook did, in fact, set off the fire alarm is the video record showing his hand in front of the alarm at the precise instant when it was triggered. There was no similar proof in Doherty's case.

{¶ 38} The stronger proof of intentionality in Holbrook's case is that fact that in his case, LexisNexis had information that it would have been difficult, if not impossible, for the alarm in his case to have been triggered accidentally because of the nature of the triggering mechanism, which required two distinct actions. By contrast, in Doherty's case, there was a report that the alarm did not appear to have been deliberately pulled but, instead, had been hit with sufficient force to have caused the alarm to have been triggered, despite the fact that it had not been intentionally triggered in the manner designed for intentional operation.

{¶ 39} Had I been the decision maker in Holbrook's case, I would not have decided to terminate his employment; I would have given him the benefit of the doubt. But that is not my decision to make; that was a decision for his employer to make, in its business judgment. We are not called upon to review whether that decision was a sound business judgment but whether Holbrook has made out a prima facie case of racial discrimination.

{¶ 40} I also find it somewhat incomprehensible that LexisNexis did not allow Holbrook an opportunity to look at the video record to see if he could explain it. But that is not a dissimilarity in the way he was treated from the way Doherty was treated, because there was no video record in Doherty's case.

{¶ 41} Because I conclude that the proof that Holbrook intentionally pulled the fire alarm was significantly stronger than the proof that Doherty intentionally pulled the fire alarm, even though it was not strong enough, in my mind, to have overcome the benefit of the doubt that I would have afforded him, I am not prepared to hold that Holbrook and Doherty were similarly situated for the purpose of concluding that LexisNexis treated them differently without a sufficient justification to avoid a reasonable inference of racial discrimination.

{¶ 42} I would affirm.